1090766, Oid Electric v. Deaton Good morning, your honors. My name is John Wilson. I am from the firm of Keith and Campbell, and we're here today on a case called Boyd Electric v. William D. In this particular case, this is our appeal from a denial of both the commission and the circuit court. Your brief doesn't have in it the arbitrator's decision or the commission's decision. Does it? I thought the arbitrator was in the... Well, it's incomplete, isn't it? It's incomplete, yes. Is that what the rules say to do with respect to these briefs? No, sir. But none of us have, except the one judge who might have the record, none of the rest of the judges have the opportunity to even see the commission's decision without contacting where the record is to get it. I apologize for that. I'm sorry. Please proceed. If we can get to the essence of your argument, you're arguing that an employee who has been awarded permanent total disability benefits should be required to produce income tax returns and earnings information. Is that part of what you're seeking? Yes, sir. I'm curious as to what authority allows that. Obviously, a section 12 medical examination is authorized. Is there anything in the act that you can point to that would authorize the employer to demand the employee's income tax records? Is there anything in the commission procedural rules that allow for that? What is the authority for that proposition? Well, the authority is 8F. A plain reading of 8F allows you to examine or question or investigate his ability to earn money, his earning of money, his ability to earn money, his ability to work, or the fact that he's working. That is what allows us to do that. The King case... Was there any evidence in this record that this man was working? Did you introduce any evidence at all that this man was working? No, sir. That's what we're... So if we would side with your theory, I can envision a cottage industry. Every person that's on permanent total disability is going to get a notification from some defense firm to produce their income tax returns. Isn't that true? Just to see what they're up to. I don't think that that's... Well, isn't that the logical, the end result? I'm saying that that may happen in certain circumstances, yes. Well, what gave you the suspicion that this man was working? I'm not familiar with that aspect. If you have no suspicion at all that he's working, what right do you have to his income tax returns? The right is given to us under the statute under 8F. Well, where does 8F say your entitlement was income tax returns and how frequently? It doesn't specifically say income tax records in there, but it does allow us to explore the fact under 8F about whether he's... He returns to work or is able to do so, earns or is able to earn. And that's what we're attempting to explore under this, by using this. Obviously, there are different methods that could have been used, like... Section 12 examination. Section 12 examination. But you didn't call for that in this case. Well, I understand, but that goes to one part of what we're required to explore in this. That goes to his ability to work. But if he's actually working now and earning money, we don't have to go that route. That's something we don't have to do. Say he's got a sedentary job or a light-duty job, working at a car wash, being a greeter at Walmart. He was working at Dominick's. He's doing something there. Whatever his job is, he's already working it. If he's already working at it, he's earning money then. I understand your point, but let me ask you this. Was there any threshold showing that he was working, was capable of working? Was there anything other than this is simply a fishing expedition and you're curious to have him update whether he's earning? Was there anything other than a request for the records? I don't believe that any of that evidence is in the records. So this case bases on a simple question. Are employers entitled to go on fishing expeditions with no evidence, prior evidence at all, and request income tax returns to determine whether someone on a permanent total disability is working? First of all, I wouldn't characterize this as a fishing expedition. Why did you do it? If you weren't fishing, why did you do it? Because ADEF allows us to do that. That's like asking why does a dog bite its tail, because it can. But my question is to you, why did you do it? Because the statute allows us to do that. The statute doesn't do it just because statutes allow us to do it. But the statute doesn't restrict it. So in other words, you're telling me that if we rule for you, everybody that's on permanent total disability will be subject to having their income tax returns examined at least once a year, any time that attorneys representing insurance companies want to ask them for them. Not just income tax. They can be sent for a Section 12 exam under King. But that's Section 12 is an examination. But Section 12 is done more or less pursuant to an ADEF action, even though one wasn't filed. That's what they were attempting to do. So the Act and the Supreme Court allowed them to do that. They didn't go on to say. So you want us to say that you're authorized to do this with everybody that's a permanent total with absolutely no cause to believe they're working. First of all, ADEF doesn't restrict. Is that what you're asking us to say or isn't it? No. No? What are you asking us to say? What I'm asking you to say is that we should be allowed to issue the subpoena or they should be able to respond to the subpoena and produce the record. How is that different than saying you should be allowed to ask everybody that's on a permanent total disability for a copy of their income tax return to determine whether they're working? How is that different? The projected effect probably would be no different. It would apply to every person who would be on a permanent total disability. You're correct. With no threshold showing that the persons working are gainfully employed. There is not an ADEF. ADEF is specifically called for by the statute. You're asking us to extend the statute in King on no legitimate legal basis that you can point to. It's not extending. It's enforcing the statute. I'm asking you to ask or require that the petitioner comply with the subpoena so that we can comply with the statute to determine whether or not he's working or is able to work or whether he's earning or is able to earn. You'd have to acknowledge here to four there is no case law authority to support this request. Is there a case law that stands for the fact that they can routinely, respondents in companies can routinely ask for income tax returns? Is there any case law to that effect? No. If there is, please call it to our attention. There's not that I'm aware of. But there's no restrictions on this. You're placing a restriction that the... No, no. Excuse me. We would be placing a restriction on it if ADEF said you've got a right to do this. ADEF doesn't say that you have a right to do this. The only thing that ADEF says is if he works or if he is capable of working, if he earns or if he is capable of earning, then there will be a reduction. Where does it say you have a right to go on any fishing expedition? Where is your right for the fishing expedition? Again, I think you're mischaracterizing this as a fishing expedition. We have not harassed this person. We have not been before you on 14 other cases where this issue has come up again. This is one case that is presented for you. I agree with you that this would apply to every person under ADEF that receives this kind of disability award. But the statute doesn't require me to have probable cause, as we heard in the last clause. I don't have to have probable cause to issue Section 12. My question to you is show me an ADEF where you have the right to conduct any fishing expedition. Okay, but when you read King, there's no probable cause in King that they asked for the Section 12 exam. There's none. They just said we want a Section 12 exam to see if he's working, to see if he has the ability to work. In this particular case, the same thing, but we chose a different route to go. We issued a subpoena for his records. We're bypassing the ability to work or, you know, can he work, is he working, the ability to work section, and going right to is he working, has he worked. It's probably more simple than the King example, but it's still the same valid thing under ADEF. They could have been characterized as a fishing expedition, too, but that was allowed. This is not a fishing expedition. This should be allowed, too. It's just another avenue to reach the same location in this case. We don't need probable cause. The statute doesn't require probable cause, and as you pointed out, there are no cases that support us, but then there are no cases that require us to have that requirement that you've got to have some of his neighbors got to say, I think the guy's working. Somebody has to say, you know, I saw him with a hard hat and hammer. You have a point that there's no specific threshold requirement delineated for the Section 12, but the point you're overlooking is, however, the medical exam part is clearly specified in the Act. The income tax records is not mentioned in the Act. But the medical exam is specified under Section 12. It was the Supreme Court that took that and related that to the ADEF that was before it. In this case, only the ADEF is before you right now. This is another avenue, just like the Section 12 exam was in the King case. The subpoena in this case is exactly the same thing. Right. Another avenue, you're arguing, however, not specified in the Act and not specified under the case law. And not denied in the Act and not denied under case law yet. So maybe we ought to write a case and maybe we ought to even graft a probable cause requirement on it before we let you have these people's income tax returns. What do you think of that one? I don't think you'd like it. No, I don't either. I don't know what you're going to get. But your argument is all or nothing. Even with the statute either says you get it or you don't get it. And even if there was probable cause, if the statute said you can't get it, you still wouldn't be entitled to it. That's correct. So yours is simply we either go with it included or not. I believe that's correct. It would apply to everyone under all circumstances that received an award under 8F, yes. Thank you. Thank you, counsel. Counsel, please. May it please the Court. Good morning, Your Honors. Richard Alexie on behalf of Mr. D. Good morning, Mr. Wilson. Mr. Alexie, I'm sure you enjoyed the spirited debate. Could you summarize your position? This is the second time I'm here on Boyd v. Electric. Second time. First time I earned a fee. This time I earned no fee. Clearly this is a fishing expedition. When the commissioner asked the counsel who was filling in for Mr. Keefe before the commissioner if he wanted an evidentiary hearing, the response was, no, just sign the order denying it. The circuit court judge asked the next iteration of the faux Gene Keefe, because this wasn't Mr. Wilson, it wasn't Mr. Keefe in the circuit court, did you ask for an evidentiary hearing because we have no record? I don't think so, Your Honor. He said, well, how can I? I mean, there's no evidence. This, as you have rightly conceived of it, is nothing more than an effort to harass or in some fashion add on to Section 8F a specious ability by respondents to chase these petitioners until they get tired of it, meaning the respondent. Somebody is making money here. So if we follow the Benjamins as one hip hop artist so saliently put it in his song, we find out what the true measure of grief is. The true measure of grief here is let's take some practitioner and let's pick a case and let's try and make some trouble. And you know what? Along the way, we might get lucky. We might have a commissioner that says, yeah, you know, we don't think, but let's let's let's take the easy way out. This commissioner didn't do that. Their firm didn't even bother to at least take the one predatory condition proceeding to make a record. They could have had the guy surveilled. I mean, if truth be known, and I don't want to speak to horse the record, but there is no record, so I can't be the horse something that doesn't exist. This guy's got a myriad of problems in addition to his compensable injuries. Second time here. If it's conceivable, if it is possible, if equity were to prevail, I would say to your honors, send us back with an admonition not to do this and remand it to the commission to have hearings under Section 16 so I can file a petition to see if I can get paid for this effort. Why didn't you, when you were aware that the appellant did not provide the orders of the commission, why didn't you do it? Why didn't I? Why didn't you do it? Do what? Provide those to the court. Your Honor, I'm afraid I'm not understanding. There's no appendix to the appellant's brief containing the commission's decision, a full copy of the argument, and Judge McClellan will know why you didn't do it. I didn't do it simply because, in my view, the case of Boyd Electric versus Mr. D, the seminal case, the principal case, the permanent total case, had already been decided by this body. So I was trying to narrow my focus without giving any credence to their position by filing this reply. Did the commission enter an order? The arbitrator signed the motion order, similar to a minute order, denying the motion. How do we know that? I'm sorry? How do we know that when your opponent fails to show it to us and you fail to show it? Your Honor, after 34 years of trying to educate my brethren on the other side of the bar, I simply didn't think I had to do it anymore. And I apologize if the court takes exception. It's not educating them. It's educating the court. But it would add nothing to the record because the record here has already been established that this was a phishing expedition to get his tax returns. There is an agreement that he was permanently and totally disabled. What is missing is the fact that the prior hearings before this alleged petition to modify benefits has already been, is a record. Judicial notice taken. Boyd versus Electric. It was decided two and a half years ago. So for that omission, I apologize. And you can rest assured it won't happen again. Thank you, Counsel. Thank you. Mr. Varno. I would just inform the court that there is no evidence of harassment here. There's no, again, there's no evidence of a phishing expedition here. The only thing that was done in this case was an issuance of a subpoena. His benefits were not cut off. He was, in fact, I don't think that they had asked that originally. In fact, I think the only thing they had asked for was the request for income tax records. So you're making a good faith effort to ask us to announce a rule that here before has not been announced in any case. As I said, a good faith effort. I'm not sure that you would be announcing a rule. I'm just sure that you would be enforcing 8F, that you were just finding that 8F would be fully enforceable from whatever manner there was? In a manner here before not acknowledged. Income tax records, the court has never held, fall within the purview of 8F as a routine request. What you're asking us to do, again, is not delineated anywhere in the statute or any case law. You're saying it's in there, inherent, but you can point to nothing specific. Again, it's just, I would believe it's just one of the tools that an attorney would have. Issuance of a subpoena for income tax records is done frequently in workers' compensation cases. It's done frequently in personal injury cases. It's not infrequently that it's done. It's not unusual. The fact that maybe this has only reached... Before or after the finding? Before. Right. This is not before, is it? But 8F allows it afterwards. You know, that's why comp is unique. 8F allows it to come in afterwards. Well, isn't your argument basically that 8F sticks out there? But how do you activate 8F remedy? Is that what you're trying to establish? Yes. I mean, let's get, you know, we've got a lot of name-calling going on here, but really that's all you're talking about. Exactly. You're just saying 8F allows modification if the claimant's able to return, earns or is earning as much as before. Now you're saying what is the mechanism to activate 8F? Exactly. Okay. And is it the argument that, well, maybe you have to go and use Section 12 to get into 8F? Is that what... That's one of the avenues. Okay. You know, the Supreme Court in the King case said we're not going to restrict the respondent's usage of Section 12 under 8F to be... We're not going to restrict that. I'm not sure why this Court then would restrict anybody's ability to proceed under 8F in any manner. Like Mr. Lexie said, apparently they could have chosen surveillance, you know, surveil the guy for two weeks, see if he's going to work for two weeks, and brought that evidence in as the sole evidence to the commissioner to show, look, this guy's driving to work every day. Here he's a carpenter. He's going up on the ladder. He's doing this. He's doing that. They could have done that. There's no restriction on that. Okay, so let's say you're running off on a lot of different avenues that gets everybody off. So what you're saying is surveillance is a means within which you can activate an 8F action, right? To me it's one of the means you can activate an 8F. So you're saying this is, in your view, no different than a surveillance procedure? Yes, but what I'm saying more than that is that you can use surveillance. You can use Section 12 to do this. You can use whatever other avenues are available to you. You know, you can go interview the people next door. Yeah, he goes to work every day. Yeah, he carries a hard hat and a lunch box. Yeah, he goes to work, yes, and he comes back at 6 o'clock every day. That can start something. You're not limited. There's no limitations under 8F. And it's clear from the King case that the Supreme Court under Section 12 in regards to 8F didn't impose any restrictions on the employer's right to conduct a Section 12 exam in that case. Thank you, Phil. Thank you. The court will take the matter under advisement for disposition to stand in recess for a short period.